MURRAY ET AL., APPELLANTS, *v.* MONTANA LUMBER
AND MANUFACTURING CO., RESPONDENT.

(No. 1,247.)

(Submitted October 5, 1900. Decided January 28, 1901.)

*Public Lands—Mining Claims—Certificate of Purchase—*
*Patents — Trusts — Ejectment — Defenses — Evidence —*
*Appeal—Rules of Supreme Court—Briefs—Assignment of*
*Error.*

1.  Where appellant's brief,—filed while former rules were still in force,—
    contains assignments of error which fail to comply with the requirements
    of the former, as well as the present, rules, such assignments will not be
    considered.

2.  Where an assignment of error in appellant's brief, though fatally defective
    under the rules in force when the brief was filed, yet so far complies with
    the present rules as to enable the Supreme Court to examine the questions
    raised by it without additional labor, the Court will waive such defect.

3.  Where assignments of error are not referred to in the argument in appel-
    lant's brief, the Court will assume that counsel for appellant considered
    them without merit.

4.  The courts will exercise their equitable powers to control and limit the
    operation of a patent as between adverse claimants whenever it is made to
    appear that by a mistaken application of the law to the facts by the officers
    of the land department the patent has been issued to the wrong person,
    or when the holder of the legal title under it has obtained it by fraud upon
    the rights of one who is entitled to it.

5.  A certificate of purchase issued by the government is evidence that the
    party receiving it had complied with all the conditions prescribed by law,
    and that he had acquired a vested interest in the land covered by the cer-
    tificate.

6.  The land covered by a certificate of purchase, immediately on the issuance
    thereof, becomes segregated from the mass of the public lands, and it is
    not subject to entry by any one else, and the officers of the land department
    have no right to convey said land to any one else, so long as the certificate
    is outstanding.

7.  Where plaintiff brings ejectment to recover a mining claim, and the defend-
    ant offers evidence of a superior claim, and that plaintiff wrongfully ob-
    tained the patent thereto, and holds the property in trust for defendant,
    it is not error to refuse to strike out such evidence for insufficiency, but
    the proper method is to move to direct a verdict.

8.  Where ejectment is brought to recover a mining claim which has been
    patented to the plaintiff, the defendant may show as a defense thereto that
    he had purchased a prior claim thereto, and was entitled to a patent there-
    for, but that his vendor afterwards wrongfully conveyed the same property
    to a third person, who relinquished the claim to the government, which en-
    abled plaintiff to obtain title to the property.

9.  Where defendant in ejectment for a mining claim patented to plaintiff
    claims under a prior claim purchased from one who received a certificate

of purchase therefor, he may show that plaintiff's patent was wrongfully procured, though his vendor did not adverse the ejector's application.

10. Where evidence offered by defendant is admissible against one plaintiff, but not against another, the latter cannot complain of the refusal of the court to strike out such evidence.

*Appeal from District Court, Silver Bow County; John Lind, say, Judge.*

EJECTMENT by James A. Murray and Home Investment and Realty Co. against the Montana Lumber & Manufacturing Company. From a judgment in favor of the defendant, and from an order denying a new trial, the plaintiffs appeal. Affirmed.

## STATEMENT OF THE CASE.

Action in ejectment to recover possession of a portion of the Railroad lode mining claim, situate in Silver Bow county, and designated as mineral entry No. 1,594. The complaint is in the ordinary form, alleging title and right of possession in plaintiffs, and ouster by defendant. The answer denies title and right of possession in plaintiffs, admits that defendant is in possession, and then proceeds, by way of equitable counterclaim, to allege facts upon which defendant demands a decree declaring the plaintiffs are trustees of the legal title for its benefit, and requiring them to convey the same to it by suitable conveyance. To the counterclaim replication is made, denying many of the allegations made therein, admitting others, and averring that defendant should not be heard to set up any claim to the title, because no adverse claim had been made by defendant during the period of publication under Murray's application for patent; and upon the issues thus raised a trial was had to a jury which rendered a general verdict for plaintiffs, with special findings as to the facts stated in the counterclaim. There upon the court, on motion of defendant, rejected the general verdict and certain of the special findings, approved the others, and entered judgment thereon in favor of the defendant for the relief demanded.

The facts set forth by defendant and found by the jury may

be stated substantially as follows: On June 24, 1880, one John Noyes and his wife, Elmira, under a location made on October 27, 1879, applied to the United States for a patent to the Placer mining claim through the United States land office at Helena; and thereafter such proceedings were had in pursuance of this application that on February 26, 1886, they paid the purchase price to the government, and received a certificate of purchase. This claim was designated as mineral application No. 787 and mineral entry No. 1,347. On January 30, Noyes and wife conveyed the whole of the claim to James W. Forbis. On November 28, 1888, the same grantors, in conjunction with one Upton and his wife, again executed a deed to the same property to the said Forbis; and on May 4, 1889, said Forbis and his wife conveyed the portion thereof in controversy herein to the defendant, which thereupon entered into possession. These various conveyances were properly acknowledged and recorded with the county clerk of Silver Bow county. On August 1, 1887, the plaintiff Murray applied to the United States land department for a patent to the Railroad lode mining claim, under a location thereof made on October 29, 1881. The application proceeded to entry, but, pending the approval of the entry by the commissioner of the general land office, and on June 16, 1888, it was discovered by that officer that there was a conflict between the Placer claim and the Railroad lode claim; and, it appearing that the latter had been located after the patent for the former had been applied for, it was ordered that the entry of the latter be held for cancellation to the extent of 7.18 acres, the area of the conflict. So the matter stood until August 21, 1889, when the commissioner of the general land office ordered a hearing in the land office at Helena as to the merits of the conflict. The proof upon this hearing was taken, but before the controversy was decided there was filed in the land office at Helena a paper, dated September 2, 1890, purporting to be a relinquishment to the United States of the conflicting area, by one George H. Casey and one Charles S. Warren and wife, together with an abstract of the title showing the conveyances

from Noyes and wife to James. W. Forbis, heretofore mentioned, and one from James W. Forbis and wife, dated July 8, 1890, to said Warren and Casey. These papers were transmitted to the department at Washington. Thereupon such proceedings were had in the general land office, that on January 24, 1891, the Railroad claim was passed to patent, including the area in conflict between it and the Placer claim; the patent being issued on March 20, 1891. On June 28, 1894, Murray conveyed an undivided fourth interest in the claim to his co-plaintiff, and it is now held by them in common.

The evidence further showed that the portion of the Railroad lode claim in controversy here was included in the area in conflict between this claim and the Placer claim. There was no proof tending to show that Noyes and wife, or the defendant, adversed the claim of Murray in the land office at Helena pending his application for patent.

The plaintiffs have appealed from the judgment and an order denying them a new trial.

*Mr. Frank W. Haskins* and *Mr. John W. Cotter,* for Appellants.

Assuming that defendant had some right to the ground in controversy under mineral entry No. 1,347, yet that right should come through Noyes, as he was the applicant for the patent and had control of the patent proceedings. Noyes, being the claimant of the ground in controversy, might release and waive his adverse claim. (2 Lind., Mines, Sec. 776; *Richmond Min. Co. v. Rose,* 114 U. S. 576, L. Ed. 273, 276.) Assuming, however, that there was no authorization by either defendant or Noyes, yet it is not shown that Murray had any notice of the issuance of the receiver's receipt to either of them, and, hence, he did not take subject to their equitable claims, unless such notice was brought home to him. (*Lindsey* v. *Hawes,* 2 Black (U. S.), 554, L. Ed. 265; *Stark v. Starr,* 6 Wall. 402, L. Ed. 925, 930.) The record of the deed from Forbis to the defend-

ant for the ground in controversy was not notice to Murray or to the Home Investment & Realty Company, as they were not purchases under the same grantor. (1 Devlin, Deeds, Secs. 713, 714; *Long* v. *Dollarhide,* 24 Cal. 218; *Hager* v. *Spect,* 52 Cal. 579; *Roberts* v. *Bourne* (Me.), 39 Am. Dec. 614.) It not being shown in the case that Noyes did not authorize a relinquishment of the ground in controversy, the defendant has failed to show itself entitled to the patent title, and hence it is not in a position to have Murray decreed a trustee. (*Meyendorf* v. *Frohner,* 3 Mont. 282, 322.)

Upon the trial the defendant offered in evidence a certified copy of the receiver's receipt issued to Noyes, which was objected to as incompetent, irrelevant and immaterial, for the reason that the record shows that a patent was issued to Murray for the Railroad lode claim after the issuance of the receipt, and there is no proof of any adverse claim or suit instituted against Murray's application, and that they are barred and estopped from asserting any claim to the property at this time, The patent of the United States may be relied upon for peace and security. (*Eureka Min. Co.* v. *Richmond Min. Co.,* 4 Saw, 302, 9 Mor. M. R. 578.) The doctrine of *res adjudicata* should be rigorously applied to the litigation brought to test the right to the issue of a patent. (*420 Min. Co.* v. *Bullion Min. Co.,* 3 Saw. 634, 11 Mor. M. R. 608.) A patent cannot be collaterally attacked for fraud. (*Meyendorf* v. *Frohner,* 3 Mont. 282, 321; *Boggs* v. *Merced Min. Co.,* 14 Cal. 279, 10 Mor. M. R, 334; *United States* v. *Marshall S. Min. Co.,* 129 U. S. 579, L. Ed. 734, 16 Mor. M. R. 205; *Steel* v. *St. Louis, etc., Co.,* 106 U. S. 447, L. Ed. 226; *Gale* v. *Best,* 78 Cal. 235.

Defendant waived its rights, both legal and equitable, in the property by not adversing the Railroad lode claim application for a patent. (U. S. Rev. Stat. Secs. 2325,2326; *Moxon* v. *Wilkinson,* 2 Mont. 421; *Meyendorf* v. *Frohner,* 3 Mont. 282; *Raunheim* v. *Dahl,* 6 Mont. 167; *Butte Hardware Co.* v. *Cobban,* 12 Mont. 351; *Black* v. *Elkhorn Min. Co.,* 49 Fed. Rep. 549; *Eureka Min. Co.* v. *Richmond Min. Co., supra; Richmond Min.*

*Co.* v. *Rose, supra*; *Gwillim* v. *Donnellan,* 115 U. S. 45, L. Ed. 348; *Dahl* v. *Raunheim,* 132 U. S. 260, L. Ed. 324; *Turner* v *Sawyer,* 150 U. S. 578, L. Ed. 1189; *Hamilton* v. *Southern Nev. Min. Co.,* 32 Fed. Rep. 562, 15 Mor. M. R. 314, 318; 2 Lind. Mines, Secs. 742 (note), 777.)

"A person claiming possession adverse to the locator of a mining claim cannot delay until the patent is, issued, and then, without attacking the patent, claim by virtue of prior posses sion. The patent concludes and bars the rights which he' has neglected, within the time provided by law, to assent." (*Talbott* v. *King,* 6 Mont. 76, 102-103; *Hamilton* v. *So. Nev. Min. Co.,* 33 Fed. 526.) Defendant offered in evidence a copy of a letter, dated January 24, 1891, from the commissioner of the general land office to the register and receiver of the local land office, showing the disposition of the conflict referred to in the letter dated October 6, 1890. To this offer plaintiffs objected, on the ground that it was incompetent, irrelevant and immaterial for any purpose, for the reason that it purports to be a relinquishment on the part of Murray of all of that part of the Railroad lode claim in conflict with the Mary Louise lode claim, which objection was overruled. There was no issue in this case as to any conflict between the Mary Louise and the Railroad lode claims, but the issue was confined strictly to the conflict between plaintiffs and defendant. We submit that this evidence was entirely incompetent and immaterial for any purpose. (1 Jones on Evidence, Secs. 136-140, and authorities cited.)

*Mr. F. T. McBride* and *Mr. E. N. Harwood,* for Respondent.

MR. CHIEF JUSTICE BRANTLY, after stating the case, delivered the opinion of the Court.

1. The brief of appellants was filed while the rules of this Court promulgated in 1896 were still in force. Five errors are assigned therein. Three of these assignments are predicated upon rulings upon the admission and rejection of certain evidence. The first and second of them we cannot consider, for

the reason that they neither set out the substance of the evidence upon which the rulings were made, as required by Rule V, Sec. 3, Subd. 2 (16 Mont. 595, 44 Pac. vii), nor refer to the pages and marginal numbers in that portion of the transcript containing the evidence, as required by the rules now in force (Rule X, Sec. 3, Subd. "b," 22 Mont. xxxiv, 57 Pac. vii). The third assignment, while not meeting the requirements of the old rule, so far complies with the present rule, by references to the transcript, as to enable us to examine the questions raised by it without additional labor. We shall, therefore, waive the defect, which would otherwise be fatal, and treat the brief as if filed under the rule now in force. The remaining two assignments are not referred to in the part of the brief devoted to the argument. We therefore assume that counsel for appellants considered them without merit.

2.   At the trial, plaintiffs rested the case upon the Murray patent, the conveyance from Murray to his co-plaintiff, and evidence of the rental value of the property during its occupation by defendant subsequent to the date of the patent. Thereupon defendant offered evidence of the other facts set forth in the statement. Objection was interposed to all of it on the ground that it was incompetent, immaterial and irrelevant. When defendant rested, plaintiffs moved the court to strike it all from the record on the same grounds as those stated in the objection. The specific objection urged was that there was an absence of other evidence showing that an adverse claim or suit had been instituted by Noyes and wife, or defendant, against Murray's application for a patent; that at the time Murray entered the Railroad claim he had actual notice of the condition of the title to the Placer claim, and that the Home Investment & Realty Company took its interest with notice; and, therefore, that the facts shown by defendant tended in no way to establish a trust in plaintiffs in its favor. Error is assigned upon the action of the court in overruling the objection and motion.

The objection to this evidence goes to its sufficiency, rather

than to any legal ground for its exclusion from consideration; for it is assumed that, if the evidence which plaintiffs asserted was wanting had been introduced by defendant, it would have been entitled to the relief sought in its counterclaim. And this is undoubtedly a correct assumption, for whenever one person wrongfully obtains title to land which in equity and good conscience belongs to another, whether it be done in good faith or not, he is properly chargeable as trustee for the benefit of such other person. The principle applies to proceedings by which patent is obtained from the United States, as well as to dealings between private individuals; and the courts have readily exercised their equitable powers to control and limit the operation of the patent as between adverse claimants whenever it has been made to appear that by a mistaken application of the law to the facts of the case by the officers of the land department the patent has been issued to the wrong person, or when the holder of the legal title under it has obtained it by a fraud upon the rights of one who is entitled to it. (*Meyendorf* v. *Frohner,* 3 Mont. p. 322; *Hermocilla* v. *Hubbell,* 89 Cal. 5, 26 Pac. 611; *South End Mining Co.* v. *Tinney,* 22 Nev. 27, 35 Pac. 89; *Bernier* v. *Bernier,* 147 U. S. 242, 13 Sup. Ct. 244, 37 L. Ed. 152; *Lindsey* v. *Hawes,* 2 Black 554, 17 L. Ed. 265; *Cornelius* v. *Kessel,* 128 U. S. 456, 9 Sup. Ct. 122, 32 L. Ed. 482; and cases cited in *Power* v. *Sla,* 24 Mont. 243, 61 Pac. 468.) The party claiming to be the rightful owner must show, of course, that he stood in such a relation to the government at the time the patent was issued that he was entitled to demand it; but, when this has been made to appear, the mere fact that the patent has been issued to another in no way impairs his right to be declared the owner.

The evidence sought to be excluded by the objection was clearly admissible as tending to show that the defendant was entitled to the relief demanded. That it fell short (if such were the fact) of establishing all the facts necessary to justify the trial court in granting this relief is no reason why it should have been excluded in the first place, or stricken from the record

at the close of defendant's case. From the point of view of plaintiffs, the proper method of attaining the end sought by the objection and motion, viz., the exclusion from consideration by the court and jury of the evidence introduced by the defendant, on the ground that it was insufficient because of its failure in the particular mentioned,—would have been, we think, to request the court to direct a verdict for the plaintiffs upon the main issue, and to submit to the jury the question of damages only. However this may be from any view, the rulings were correct.

It was not necessary for the defendant to show that Noyes and wife, or defendant, had prosecuted successfully adverse proceedings against Murray's application for patent. Noyes and wife had already gone through all the regular proceedings to obtain a patent, and had received a certificate of purchase. This was evidence that they had complied with all the conditions prescribed by law, and that they had acquired a vested interest in the land embraced in the Placer claim. The public faith was thus pledged to them, as well as their grantees, and thereafter the officers of the land department had no right to convey to any one else, so long as the certificate was outstanding. (Lindley on Mines, Sec. 771; *Wirth* v. *Branson*, 98 U. S. 118, 25 L. Ed. 86.) The lands covered by the certificate immediately upon its issuance became segregated from the mass of public lands, and were not subject to entry by any one else. The right to the patent thus became vested in Noyes and wife, and thereafter the title stood as if the patent had already issued. The mere delay in its issuance did not subject them, or their grantees, to additional burdens, or expose them to assaults of third parties. (*Benson Mining & Smelting Co.* v. *Alta Mining and Smelting Co.*, 145 U. S. 428, 12 Sup. Ct. 877, 36 L. Ed. 762; *Stark* v. *Starrs*, 6 Wall. 402, 18 L. Ed. 925; also authorities last cited.) Neither their rights nor those of the grantees were affected by proceedings in the land department, in which it appears they took no part.

Conceding, for the sake of argument, that, in the absence of

evidence showing that Murray had notice of the rights of Noyes and wife at the time his patent to the Railroad lode claim was issued, his title to the portion embraced in the conflict would be good as against the claim of defendant, the rulings of the court below were correct.   Under the facts, as shown by the evidence, it cannot be urged that he had no notice of the existence of defendant's rights.   The plaintiff Murray took part in the proceedings had under the order of the commissioner of August 21, 1889; he therefore had personal knowledge of Noyes' title.   Furthermore, the records of Silver Bow county showed that Noyes and wife had parted with their rights to defendant.   He resorted to these records for the evidence upon which he relied to obtain his patent.   The abstract obtained from these records and presented to the land department was intended to show that the Casey and Warren relinquishment of the Noyes title—without which he could not obtain a patent —was authorized.   Having relied upon what was disclosed by the records touching the condition of the Noyes title, he was bound by whatever they disclosed, and must be presumed to have had notice of their contents.   Though he claims under the patent, he virtually occupies the position of a junior grantee of the Noyes title, for the patent would not have issued but for the fact that the commissioner of the land department was led to believe that this title was properly reconveyed to the United States under the alleged relinquishment by Casey and Warren.

Conceding, again, that the Home Investment & Realty Company's title is superior to that of the defendant, in the absence of actual notice of defendant's equities at the time it took from Murray, it stands in no position to complain of the rulings in question.   No question was raised here as to the sufficiency of the evidence, or a want of evidence, to sustain the findings, nor that the findings do not support the judgment.   So far as a consideration of this feature of the case is concerned, this plaintiff can obtain no relief.   And, even though the evidence objected to should properly have been excluded or stricken out at the instance of this plaintiff, the ruling of the court below was never-

theless correct. The purpose of the objection and motion was to exclude it altogether from the consideration of the court and jury. To have done this would have been error, for, as we have seen, Murray had no right to complain and the exclusion of the evidence would have prejudiced defendant's rights as against him. The objection and motion were too broad.

Let the judgment and order appealed from be affirmed.

*Affirmed.*

Mr. Justice Milburn, not having heard the argument, takes no part in this decision.